UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PHIL LIFSCHITZ,

    Plaintiff,

v.

CONFORMIS, INC., MARK A. AUGUSTI, CARRIE BIENKOWSKI, KENNETH P. FALLON, III, GARY P. FISCHETTI, PHILIP W. JOHNSTON, and BRADLEY LANGDALE,

    Defendants.

Case No. _____

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

---

Plaintiff Phil Lifschitz ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This action is brought by Plaintiff against Conformis, Inc. ("Conformis" or the "Company") and the members of Conformis' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Conformis will be acquired by restor3d, Inc. ("restor3d") through restor3d's subsidiary Cona Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On June 22, 2023, Conformis and restor3d issued a joint press release announcing that they had entered into an Agreement and Plan of Merger, dated June 22, 2023, to sell Conformis to restor3d (the "Merger Agreement"). Under the terms of the Merger Agreement, Conformis shareholders will receive $2.27 in cash for each share of Conformis common stock they own (the "Merger Consideration").

3.      On July 24, 2023, Conformis filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Conformis stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Conformis management's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by UBS Securities LLC ("UBS"); and (iii) UBS's and Company insiders' potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Conformis stockholders need such information to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4.      In short, unless remedied, Conformis' public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Moreover, Conformis' common stock trades on the Nasdaq Capital Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Conformis.

9. Defendant Conformis is a Delaware corporation, with its principal executive offices located at 600 Technology Park Drive, Billerica, MA 01821. Conformis develops, manufactures, and sells patient-specific products and instrumentation. Conformis' shares trade on the Nasdaq Capital Market under the ticker symbol "CFMS."

10. Defendant Mark Augusti ("Augusti") has been President, Chief Executive Officer ("CEO"), and a director of the Company since November 2016.

11. Defendant Carrie Bienkowski ("Bienkowski") has been a director of the Company since July 31, 2018.

12. Defendant Kenneth P. Fallon, III ("Fallon") has been Chairman of the Board since February 2015 and a director of the Company since January 2005.

13. Defendant Gary P. Fischetti ("Fischetti") has been a director of the Company since May 2022.

14. Defendant Philip W. Johnston ("Johnston") has been a director of the Company since May 2017.

15. Defendant Bradley Langdale ("Langdale") has been a director of the Company since May 2008.

16. Defendants identified in paragraphs 10-15 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

17. restor3d is a leading medical device company based in Durham, North Carolina. restor3d enables surgeons to improve the reconstruction and repair of the musculoskeletal system through personalized implants with enhanced anatomical fit and superior integrative properties.

18. Merger Sub is a Delaware corporation and wholly owned subsidiary of restor3d.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

19. Conformis is a medical technology company that uses its proprietary iFit Image-to-Implant technology platform to develop, manufacture and sell joint replacement implants that are individually sized and shaped, which the Company refers to as personalized, individualized, or sometimes as customized, to fit and conform to each patient's unique anatomy. The Company also offers Identity Imprint, a new line of total knee replacement products that utilizes a proprietary algorithm to select the implant size that most closely meets the geometric and anatomic requirements of the patient's knee. Conformis' sterile, just-in-time, Surgery-in-a-Box delivery system is available with all its implants and personalized, single-use instruments. The Company's

proprietary iFit technology platform is potentially applicable to all major joints.

20.     On May 8, 2023, the Company announced its first quarter 2023 financial results and business developments. Net loss was $9.6 million, or $1.32 per basic and diluted share, in the first quarter of 2023, improved from a net loss of $16.0 million, or $2.24 per basic and diluted share, in the same period last year.

**The Proposed Transaction**

21.     On June 22, 2023, Conformis and restor3d issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> DURHAM, N.C. and BILLERICA, Mass., June 22, 2023 (GLOBE NEWSWIRE) -- restor3d, Inc. and Conformis, Inc. (NASDAQ: CFMS) announced today that they have entered into a definitive merger agreement under which restor3d, a leading personalized 3D-printed orthopedic company, will acquire all outstanding shares of common stock of Conformis at $2.27 per share in cash, which represents an approximate 96 percent premium to the closing price of Conformis stock on June 22, 2023.
>
> "This combination will create a leading personalized 3D-printed medical device company. Together, we share a common belief in the power of personalization. By leveraging the strengths in our respective portfolios around artificial-intelligence-driven implant design, digital automation, and 3D printed osseointegrative biomaterials, we see tremendous opportunity to offer clinically differentiated and cost-effective solutions across the orthopedic landscape, including shoulder, foot & ankle, spine, and large joints," stated Kurt Jacobus, Chief Executive Officer of restor3d.
>
> "After nearly 20 years of revolutionizing the orthopedic industry with personalized treatment and patient choice, this transaction is a testament to the value of our portfolio and the strength of our core technology and intellectual property," said Mark Augusti, Chief Executive Office at Conformis. "Following a diligent and thoughtful process, the Board has unanimously approved this transaction, which delivers positive benefits to all of our stakeholders. We are excited to enter the next chapter for Conformis with restor3d, which allows us to continue helping patients live productive lives after knee or hip surgery and providing the surgeon community with innovative products and services."
>
> Conformis' Board of Directors, having determined that the transaction is in the best interests of the company's stockholders, has unanimously approved the transaction.

The closing of this transaction is expected by the end of Q3 2023 and is subject to approval by Conformis' stockholders and other customary closing conditions.

**Advisors**
UBS Investment Bank is serving as financial advisor to Conformis, and Hogan Lovells US LLP is serving as its legal counsel.  Jones Day is serving as legal counsel to restor3d.

**Insiders' Interests in the Proposed Transaction**

22.     Conformis insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Conformis.

23.     Notably, Company insiders stand to reap substantial financial benefits for securing the deal with restor3d.  Under the terms of the Merger Agreement, all Company restricted share units ("RSUs") and performance-based RSUs ("PSUs") will vest and convert into the right to receive cash payments, as set forth in the following tables:

| Name | Number of Shares of Restricted Stock and/or RSUs | Total Per Share Cash Consideration ($)[(1)] |
|---|---|---|
| *Executive Officers:* | | |
| Mark A. Augusti | 98,974 | 224,671 |
| Christine Desrochers | 79,585 | 180,658 |
| Robert S. Howe[(2)] | 90,984 | 206,534 |
| Denise E. Pedulla | 16,560 | 37,591 |
| *Non-Employee Directors:* | | |
| Carrie Bienkowski | — | — |
| Kenneth P. Fallon III | — | — |
| Gary P. Fischetti | 6,911 | 15,688 |

| Name | Number of PSUs (at target) | Total Per Share Cash Consideration ($)(1) |
|---|---|---|
| *Executive Officers:* | | |
| Mark A. Augusti | 17,778 | 40,356 |
| Christine Desrochers | — | — |
| Robert S. Howe(2) | 8,889 | 20,178 |

24. Moreover, if they are terminated in connection with the Proposed Transaction, Conformis' named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

**Golden Parachute Compensation**

| Named Executive Officers | Cash Payments ($)(1) | Equity Awards ($)(2) | Perquisites/ Benefits ($)(3) | Other ($)(4) | Total ($) |
|---|---|---|---|---|---|
| Mark A. Augusti | 2,473,040 | 265,027 | 52,800 | — | 2,790,867 |
| Robert S. Howe | — | 226,712 | — | — | 226,712 |
| Denise E. Pedulla | 383,250 | 37,591 | 10,272 | 120,000 | 551,113 |

**The Proxy Statement Contains Material Misstatements and Omissions**

25. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections; (ii) the inputs and assumptions underlying the financial analyses performed by the Company's financial advisor UBS; and (iii) UBS's and Company insiders' potential conflicts of interest. Accordingly, Conformis stockholders are being asked to vote in favor of the Proposed Transaction or seek appraisal without all material information at their disposal.

*Material Omissions Concerning the Company's Financial Projections*

26. The Proxy Statement fails to disclose material information concerning the Company's financial projections.

27. For example, with respect to the Company's "Projections," the Proxy Statement fails to disclose all line items underlying: (i) Adjusted EBITDA; (ii) EBITDA; (iii) EBIT; and (iv) Unlevered Free Cash Flow.

28. The omission of this information renders the statements in the "Certain Conformis Unaudited Prospective Financial Information" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning UBS's Financial Analyses*

29. The Proxy Statement also describes UBS's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of UBS's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Conformis' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on UBS's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Conformis' stockholders.

30. With respect to UBS's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the Company's estimated standalone NTM revenue as of fiscal year-end 2027; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 20.0% to 22.0%; (iii) quantification of the amounts of the additional mid-year capital raises through December 31, 2027 and the corresponding assumed share prices for the "DCF – Capital Raises Through 2027" analysis; (iv) the Company's net debt as of June 22, 2023; and (v) the Company's diluted share information as of June 22, 2023.

31. With respect to UBS's Analyst Price Targets for Conformis, the Proxy Statement fails to disclose the source of the analyst price target observed.

32. With respect to UBS's *Selected Public Companies Analysis* and *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose (a) the identities of the companies and transactions observed and (b) the financial multiples and metrics for each of the companies and transactions analyzed.

33. The omission of this information renders the statements in the "Opinion of UBS Securities LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning UBS's and Company Insiders' Potential Conflicts of Interest*

34. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's financial advisor, UBS.

35. For example, the Proxy Statement fails to disclose whether UBS has performed any services for the Company or restor3d and its affiliates in the two years preceding UBS's fairness opinion in connection with the Proposed Transaction, and, if so, the specific nature of the services provided, and the fee received for such services.

36. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

37. The omission of this information renders the statements in the "Opinion of UBS Securities LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

38. Further, the Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Conformis insiders.

39. The Proxy Statement fails to disclose whether any of Conformis' executive officers or directors is continuing their employment following consummation of the Proposed Transaction, as well as the details of all employment and retention-related discussions and negotiations that occurred between restor3d and Conformis' executive officers, including who participated in all such communications, when they occurred and their content.  The Proxy Statement further fails to disclose whether any of restor3d's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

40. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

41. The omission of this information renders the statements in the "Background of the Merger" and "Interests of the Conformis' Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

42. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff, and the other stockholders of Conformis will be unable to make a sufficiently informed voting or appraisal decision in

connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

43. Plaintiff repeats all previous allegations as if set forth in full.

44. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, considering the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

45. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresents and/or omits material facts, including material information about (i) the company's financial projections; (ii) the inputs and assumptions underlying UBS's financial analyses; and (iii) UBS's and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

46. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

47. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

48. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

49. Plaintiff repeats all previous allegations as if set forth in full.

50. The Individual Defendants acted as controlling persons of Conformis within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Conformis, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

53. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Conformis stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Conformis, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Conformis stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.	Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.	Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 17, 2023									WEISS LAW

By  /s/ Michael Rogovin
Michael Rogovin
476 Hardendorf Ave. NE
Atlanta, GA 30307
Tel: (404) 692-7910
Fax: (212) 682-3010
Email: mrogovin@weisslawllp.com

*Attorneys for Plaintiff*